1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA RAINES and DARRICK FIGG, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiffs,<br><br>v.<br><br>U.S. HEALTHWORKS MEDICAL GROUP, a corporation; *et al.*,<br><br>                                        Defendants. | Case No.:  19-cv-1539-DMS-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Pending before the Court is Plaintiffs' motion for class certification.  (Pls.' Mot. for Class Certification ("Mot."), ECF No. 131.)  Defendants U.S. Healthworks Medical Group, et al. ("Defendants" or collectively "USHW") filed a response in opposition.[1]  (Defs.' Response in Opposition, ("Opp'n"), ECF No. 142), and Plaintiffs filed a reply.  (Plaintiffs' Reply, ("Reply"), ECF No. 151.)  The matter came on for oral argument on July 2, 2024,

---

[1]Plaintiffs allege Select Medical Holdings Corporation, Select Medical Corporation, Concentra Group Holdings, LLC, Concentra, Inc., Concentra Primary Care of California, Occupational Health Centers of California, and Does 9–10 ("Concentra Defendants") acquired U.S. Healthworks Medical Group and U.S. Healthworks Inc. in or around 2018 and are successors in interest to those Defendants. (Third Amended Complaint ¶¶ 15, 22–25.) Plaintiffs refer to Defendants U.S. Healthworks Medical Group, U.S. Healthworks Inc., and the Concentra Defendants collectively as "USHW".  (*Id.* ¶ 25.)

and thereafter the parties filed supplemental briefing at the Court's request.  (ECF Nos. 158, 159.)  For the following reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' motion for class certification.

## I. BACKGROUND

This case involves two job applicants, Plaintiffs Kristina Raines and Darrick Figg, who allege they and thousands like them in California were subjected to highly offensive and irrelevant medical questions on a standardized health history questionnaire ("HHQ") used by USHW, an occupational health provider that acted on behalf of employers who made job offers to applicants like Plaintiffs conditioned on their passing a pre-placement medical exam ("PPE" or "PPEs").  The health questionnaire was part of USHW's PPE to determine if the applicant could perform the essential functions of the job they had been conditionally offered.  Plaintiffs allege that California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't. Code § 12900, *et seq*,[2] permits an employer to condition an employment offer upon the job applicant passing a PPE, but only if the "examination or inquiry is job related and consistent with business necessity."  (Third Amended Complaint ("TAC"), ¶ 77) (citing Gov't. Code § 12940(e); ECF No. 106.)  Plaintiffs allege USHW violated the FEHA by giving the *same* standardized HHQ with more than 150 questions to *every* referred applicant regardless of the essential functions of their job, and that the questionnaire included questions that were irrelevant and unrelated to *any* job offered by *any* referring employer.  Plaintiffs seek to certify a class under Federal Rules of Civil Procedure 23(a) & (b)(3) consisting of thousands of similarly situated California job applicants and seeking nominal and punitive damages against USHW under the FEHA, Gov't Code § 12940(e), for USHW's alleged violations of FEHA in administering the HHQ.

Plaintiff Raines alleges that in March of 2018, she applied for a job with Front Porch Communities and Services ("Front Porch"), located in Carlsbad, California.  (TAC ¶ 47.)

---

[2] Future citation to the FEHA, codified in California Government Code §§ 12900 *et seq*, will appear as "FEHA § ____", "Gov't Code § ____", or "§ ____".

The position for which she applied—Food Service Aide—included the following duties: cleaning and maintaining the work area, transporting trash disposal, and re-stocking dishes, kitchen utensils and food supplies. (*Id.* ¶ 48.)  Front Porch offered Raines the position, but conditioned the offer on her passing a PPE to be administered by USHW at its facility in Carlsbad.  During the PPE, Raines was directed to complete the standardized HHQ.  (*Id.* ¶ 50.)  She was also directed to sign a disclosure form, titled "Authorization to Disclose Protected Health Information to Employer." (*Id.*)

Raines alleges USHW's HHQ asked questions that were intrusive, highly offensive, overbroad, and unrelated to the functions of *any* job position, let alone the one to which she applied.  (*Id.* ¶ 42.)  The questions she was asked included whether she had a history of venereal disease, painful or irregular vaginal discharge, problems with menstrual periods, penile discharge, prostate problems, genital pain or masses, cancer or tumors, HIV, mental illness, disabilities, painful or frequent urination, hemorrhoids, and constipation. (*Id.* ¶ 37.)   Additional questions asked whether she was pregnant, what prescription medication she took, and for information about prior on-the-job injuries or illnesses.  (*Id.* ¶ 38.)  Raines reluctantly answered all of the question on the HHQ, except for a question relating to the date of her last menstrual period, which she refused to answer on grounds it had nothing to do with her job duties and was particularly private information.  (*Id.* ¶ 52.) In response, a USHW physician terminated the exam, (*id.* ¶ 53,) and Front Porch revoked its offer of employment to Raines because of her refusal to complete the medical examination.  (*Id.* ¶ 54.)

Similarly, San Ramon Valley Fire Protection District conditioned its offer to Plaintiff Figg in the Volunteer Communication Reserve on passing a PPE to be administered by USHW.  (*Id.* ¶¶ 56–57.)  Figg, like Raines, was directed to complete the same HHQ and to sign the same disclosure form.  (*Id.* ¶ 58.)  Unlike Raines, Figg answered all the questions and was ultimately hired as an unpaid "volunteer."  (*Id.* ¶¶ 60–62.)

Raines initially filed suit in state court against Front Porch and Defendants, including USHW, (Ex. 1 to ECF No. 1), and thereafter Defendants removed the action to this Court

under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Raines subsequently filed a First Amended Complaint, adding Select Medical Holdings Corporation and Concentra Group Holdings, LLC, as Defendants. (Ex. 13 to ECF No. 1.)  Following removal, Raines settled with Front Porch and filed a Second Amended Complaint ("SAC"), which added Plaintiff Figg and Defendants U.S. Healthworks, Inc., Select Medical Corporation, Concentra, Inc., and Concentra Primary Care of California.  (ECF Nos. 58, 59, 69.) Defendants moved to dismiss the SAC and the Court granted the motion with leave to file a third amended complaint. (ECF No. 102.)  Plaintiffs filed their TAC on August 6, 2020, adding Occupational Health Centers of California as a Defendant. (ECF No. 106.)  In the TAC, Plaintiffs Raines and Figg claimed, individually and on behalf of putative class members, that USHW's medical examinations: (1) violated FEHA; (2) violated the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51, *et seq.*, (3) intruded on Plaintiffs' right to seclusion; and (4) violated California's Unfair Competition Law, Cal. Business & Professions Code §§ 17200, *et seq.* ("UCL").

Defendants filed a motion to dismiss the TAC and the Court granted the motion dismissing all claims without leave to amend except the UCL claim.  Plaintiffs voluntarily dismissed the UCL claim and appealed to the Ninth Circuit, which thereafter issued a memorandum disposition affirming dismissal of Plaintiffs' Unruh Act and intrusion upon seclusion claims.  As to the FEHA claim, however, the Ninth Circuit certified a question to the California Supreme Court asking the Supreme Court to address whether a "business entity acting as an agent of an employer" can be held directly liable under FEHA to the same extent as the referring employer.  The California Supreme Court answered the question affirmatively and held that a "business entity agent" can be held directly liable under FEHA for employment discrimination when that agent has a least five employees and carries out FEHA-regulated activities on behalf of an employer.  (ECF No. 127); *Raines v. U.S. Healthworks*, 15 Cal. 5th 268 (2023).   Accordingly, with benefit of clarification, the Ninth Circuit reversed this Court's order dismissing Plaintiffs' FEHA claim.

Plaintiffs now seek to certify a class under the FEHA against USHW consisting of all job applicants (for paid and unpaid positions) who underwent a PPE and were subjected to USHW's standardized HHQ at one of its approximately 78 facilities in California between October 23, 2017 and December 31, 2018.  Specifically, Plaintiffs define the class, as follows: "[E]very applicant who underwent a post-offer, pre-placement examination ("PPE") at a USHW facility in California between October 23, 2017, and December 31, 2018."  (ECF No. 131.)  For the reasons discussed below, the Court finds Plaintiffs have carried their burden under Rule 23(a) & (b)(3) and defines the class to include every applicant for a paid position during the 14-month period in question who was subjected to USHW's standardized HHQ as part of their PPE.  The Court further finds that Figg's claim is not typical of the class as he applied for an unpaid position, and therefore falls outside of FEHA's protections against employment discrimination in the hiring process and workplace.

## II. LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal*-Mart *Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308–09 (9th Cir. 1977).  "The Rule 'does not set forth a mere pleading standard.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Dukes*, 564 U.S. at 350).  "Rather, a party must not only 'be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)[.]"  *Comcast*, 569 U.S. at 33 (quoting *Dukes*, 564 U.S. at 350) (internal citation omitted).

/ / /

1    Federal Rule of Civil Procedure 23(a) sets out four requirements for class

2 certification—numerosity, commonality, typicality, and adequacy of representation.  A

3 showing that these requirements are met, however, does not warrant class certification.

4 The plaintiff also must show that one of the requirements of Rule 23(b) is met.  Here,

5 Plaintiffs assert they meet the requirements of Rule 23(b)(3).

6    Rule 23(b)(3) "allows class certification in a much wider set of circumstances but

7 with greater procedural protections," *Dukes*, 564 U.S. at 362, including that: (a) "'questions

8 of fact or law common to class members predominate over questions affecting only

9 individual members,'" *id.* (quoting Fed. R. Civ. P. 23(b)(3)), (b) class treatment is

10 determined to be superior to other methods of adjudicating the controversy, and (c) class

11 members receive "'the best notice that is practicable under the circumstances[,]'" *id.*

12 (quoting Fed. R. Civ. P. 23(c)(2)(B)), and are allowed to "withdraw from the class at their

13 option." *Id.*  Plaintiffs must prove, by a preponderance of the evidence, the elements of

14 Rule 23(a) and Rule 23(b)(3) are satisfied.  *Olean Wholesale Grocery Cooperative, Inc. v.*

15 *Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022), *cert. denied*, 143 S.Ct. 424

16 (2022).

17    The district court must conduct a rigorous analysis to determine whether the

18 prerequisites of Rule 23 have been met.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

19 It is a well-recognized precept that "the class determination generally involves

20 considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's

21 cause of action.'"  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (quoting

22 *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558 (1963)).  "Although some inquiry

23 into the substance of a case may be necessary to ascertain satisfaction of the commonality

24 and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits

25 at the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th

26 Cir. 1983) (citation omitted).  Rather, a court's review of the merits should be limited to

27 those aspects relevant to making the certification decision on an informed basis.  *See* Fed.

28 R. Civ. P. 23 advisory committee's notes.  If a court is not fully satisfied that the

requirements of Rule 23(a) and (b) have been met, certification should be denied. *Falcon*, 457 U.S. at 161.

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Initially, Defendants contend Plaintiffs' FEHA claim is barred because neither Raines nor Figg exhausted their administrative remedies as required by Gov't Code § 12960.  "In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001) (quoting *Yurick v. Sup. Ct.*, 209 Cal. App. 3d 1116, 1121 (1989)). This requirement applies to class actions as well.  Gov't Code § 12960.  For purposes of FEHA, exhaustion requires filing a written charge with the Department of Fair Employment and Housing ("DFEH") "within one year of the alleged unlawful employment discrimination and obtaining notice from DFEH of the right to sue." *Id.*  Defendants argue Raines failed to timely (1) file an administrative charge naming USHW as a party; and (2) provide notice of the putative class action.

It is undisputed Raines was examined by USHW on March 7, 2018.  Raines filed her administrative claim with DFEH on March 14, 2018, naming her former employer, but not USHW.  However, on August 28, 2018, Plaintiff amended her claim and added USHW as a party.  Because the amendment was within the one-year limitations period prescribed by §12960(e)(1), Raines' claim against USHW is not barred on that ground.

On May 8, 2019, more than one year after her PPE, Raines amended her administrative claim to provide notice of the putative class action.  Section 12960(e)(1) provides a 90-day grace period after the one-year limitations has elapsed to amend a charge if the claimant discovers new information within that period. Gov't Code § 12960(e)(6)(A).  Raines contends she discovered the basis for her class allegations on March 21, 2019, during a deposition of a USHW physician's assistant who testified that USHW used the standardized HHQ for every pre-placement examination regardless of job duties.  (Reply at 7-8) (citing Declaration of Michael Miller ¶¶ 2-4 & Exhibits A, C.)  Given the present

7

record and Raines' proffer regarding discovery within the 90-day grace period, the claim is timely.

Accordingly, Raines has exhausted her administrative remedies under FEHA. Because only one plaintiff needs to exhaust administrative remedies under FEHA on behalf of a class, the Court declines to address Defendants' argument that Figg also failed to exhaust administrative remedies.  *See Harris v. County of Orange*, 628 F.3d 1126, 1136 (9th Cir. 2012) ("Federal courts have found that so long as one plaintiff timely files an administrative complaint [under FEHA], a class of similarly-situated plaintiffs may "piggyback" on that complaint, thereby satisfying the exhaustion requirement.")

**B. Federal Rule of Civil Procedure 23(a)**

Plaintiffs seek class certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  Rule 23(a) and its prerequisites for class certification—numerosity, commonality, typicality, and adequacy of representation—are addressed in turn followed by consideration of the predominance inquiry under Rule 23(b)(3).

1. <u>Numerosity</u>

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  Plaintiffs need not state the exact number of potential class members; nor is a specific minimum number required.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Rather, whether joinder is impracticable depends on the facts and circumstances of each case.  *Id.*

Plaintiffs contends the proposed class consists of an estimated 370,000 individuals, the vast majority of whom applied for jobs as employees, i.e., paid positions, and all of whom are readily identifiable from Defendants' database.[3]  Plaintiffs argue and USHW

---

[3] Plaintiffs contend that USHW has failed to identify any other "volunteer" among the several thousand job applicant class members, (Plaintiffs' Supplemental Briefing, ("Pls.' Supp. Brief."), ECF No. 159, at 17), and that ascertaining these applicants can be done through USHW's database.  Plaintiffs point out that the magistrate judge stated in a discovery order that: "During the Discovery Conferences, USHW

does not dispute that the class is sufficiently numerous though USHW contends the number of applicants during the 14-month period is approximately 245,000. The numerosity requirement is therefore satisfied.

### 2. Commonality

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of class wide resolution[.]" *Dukes*, 564 U.S. at 350. As summarized by the Supreme Court:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of commons answers.

*Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). Because "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions[,]" *Amchen Prods. v. Windsor*, 521 U.S. 591, 609 (1997), the Court addresses commonality in its discussion of Rule 23(b)(3) below.

### 3. Typicality and Adequacy

Typicality focuses on the relationship of facts and issues between the class and its representatives. Rule 23(a)(3) requires that "the legal claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury,

---

represented that all the information sought by Plaintiff above [including names, addresses, contact information for all putative class members and referring employers, and exam dates and locations] is maintained in a searchable electronic database." (Mot. at 23-24) (citing Order Re Discovery Disputes Concerning Plaintiffs' Interrogatory Nos. 10-14), ECF No. 66, at 2-3.))

whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1030 (9th Cir. 2012).

Adequacy requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns: "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975). The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626, n.20 (1997) (*quoting Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 158, n. 13 (1982)). "Among other functions, these requirements serve as ways to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gaudin v. Saxon Mortgage Servs.*, 297 F.R.D. 417, 425 (N.D. Cal. Aug. 5, 2013) (quoting *Falcon*, 457 U.S. at 158, n. 13 (1982)).

Plaintiffs argue typicality and adequacy are satisfied because "[t]this action is not based on conduct unique to Plaintiffs but arises from a systemic, uniform policy and practice that violated the rights of all applicants to be free from untailored medical inquiries as a condition of employment." (Mot. at 21.) As to applicants for paid positions, the Court agrees. Plaintiffs limited the scope of their suit to one alleged injury caused by an overbroad and untailored HHQ administered by USHW in violation of FEHA § 12940(e),

1   resulting in nominal and punitive damages.  As discussed below, Raines has made a

2   sufficient showing that she was subjected to the same HHQ by USHW as all class members

3   and that there is no job for which the HHQ would be FEHA compliant.  Thus, Raines'

4   claim is typical of all class members.

5         Nevertheless, Defendants argue that Raines is not typical of the Class because: she

6   is no longer a California resident; she settled her claims with her potential employer, Front

7   Porch; and she refused to complete her PPE, which differentiates her from those who did,

8   like Figg.  (Opp'n at 9.)  Because Raines' alleged injury occurred in California under a

9   California statute based on the same conduct attributed to USHW against all class

10  members, her current place of residence is irrelevant to the typicality inquiry.  So, too,

11  settlement of her claims against Front Porch is irrelevant; Raines' focus is on USHW for

12  direct liability under FEHA for its own conduct, not Front Porch's conduct.  Finally,

13  Plaintiffs have streamlined their case against USHW to pursue only the FEHA claim based

14  on USHW's administration of an alleged unlawful HHQ that was given to every job

15  applicant.  Plaintiffs are no longer pursuing compensatory damages under FEHA or any

16  other theory of liability, only nominal and punitive damages under FEHA based on the

17  HHQ and alleged violations of § 12940(e).  Whether an applicant completed the HHQ is

18  irrelevant to the FEHA claim as presently framed.  As Plaintiffs note, liability and inclusion

19  in the class turn on whether USHW asked an unlawful question, not on whether an

20  applicant answered it.  (Reply at 5); *see also Armstrong v. Davis,* 275 F. 3d 849, 868-69

21  (9th Cir. 2001) (stating where a lawsuit challenges a system-wide practice "differences in

22  the nature of the specific injuries suffered by the various class members … are insufficient

23  to defeat typicality.")  Raines' reframed case makes her claims typical of the claims of

24  putative class members.

25        With respect to Figg, Defendants correctly argue he is not typical of the class because

26  he applied for an unpaid position, which is not covered by FEHA.  *See Mendoza v. Town*

27  *of Ross*, 128 Cal. App. 4th 625 (2005) (rejecting plaintiff's discrimination claim under the

28  FEHA because the statutory scheme applies only to employees, not unremunerated

workers); *Estrada v. City of Los Angeles*, 218 Cal. App. 4th 143 (2013) (similar); *Talley v. County of San Francisco*, 51 Cal. App. 5th 1060, 1083 (2020) (similar). Summed up: "In order to recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee." *Shephard v. Loyola Marymount Univ.*, 102 Cal. App. 4th 837, 842 (2002). "[T]he absence of remuneration prevents [plaintiff] from attaining 'employee' status under the FEHA." *Mendoza*, 128 Cal. App. 4th at 637. Here, FEHA § 12940(e)(3) permits an employer to require a medical or psychological examination or inquiry of a "job applicant" if "the examination or inquiry is job related and consistent with business necessity" and "all entering *employees* in the same job classification are subject to the same examination or inquiry." *Id.* (emphasis added). It is undisputed Figg was uncompensated, served in a volunteer capacity, and is not an employee. As such, § 12940(e) does not apply to him since he was not an applicant for a paid position.

This result is consistent with settled principles of statutory construction. "Statutes are to be construed so to avoid absurd or unreasonable results." *Shephard*, 102 Cal. App. 4th at 846. In a neighboring provision regarding post-hiring conduct of an employer, the FEHA specifically prohibits medical or psychological examination or inquiry of an "employee" unless the exam or inquiry is "job related and consistent with business necessity." Gov't. Code § 12940(f) (no reference to unpaid intern or volunteer). It would be incongruous to interpret FEHA's prohibitions to apply to job applicants for unpaid positions in § 12940(e), as Plaintiffs argue, when those same prohibitions post-hiring apply only to "employees" in § 12940(f). Furthermore, a legislative body is "presumed to be aware of… [a] judicial interpretation of a statute and to adopt that interpretation" when it enacts a new statute. *Lorillard v. Pons,* 434 U.S. 575, 580 (1978). In 2014, twelve years after *Shepard* held that "to recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee[,]" 102 Cal. App. 4th at 842, the California Legislature amended FEHA to prohibit harassment based on race, religion, gender and other characteristics against "an employee, an applicant, an *unpaid intern or*

*volunteer*, or a person providing services pursuant to a contract." *Id.* § 12940(j) (emphasis added); *see* Cal. Assemb. B. No. 1443 (2014).   In doing so, the Legislature expanded protection in § 12940(j) beyond employees, but did not do so in § 12940(e) & (f) (referencing only "employee" or "employees").   Accordingly, the Court finds Figg's claim as a job applicant for an unpaid position is unlike Raines and all other putative class members who were applicants for paid positions.   Figg's claim is therefore not typical of the claims of the class.

USHW also argues that Plaintiffs are inadequate representatives because they are waiving compensatory damages, including emotional distress damages, under FEHA and pursuing only nominal and punitive damages.   Plaintiffs respond that the potential recovery is too slight to support individual suits, particularly so after the Court dismissed their privacy claim finding that "the questions were not so highly offensive as to constitute an intrusion upon seclusion."   (Reply at 7-8) (citing ECF No. 115 at 15.)   Plaintiffs proffer that while individual recovery may be too slight (in view of the Court's order), the injury is substantial in the aggregate and thus, well suited for class treatment.   (*Id.*)   The Court finds that Raines and her counsel have made a principled decision under the circumstances and can adequately represent the putative class.   Class members also are free to opt out and pursue litigation individually if they believe their circumstances warrant it.

As to adequacy of counsel, there is no dispute that Plaintiffs' counsel has extensive experience litigating class action cases and has vigorously protected the interests of the class.   This matter has been thoroughly litigated, and Plaintiffs' counsel has secured favorable results before the California Supreme Court and Ninth Circuit.   The adequacy requirement of Rule 23 is therefore met.

## B.  Federal Rule of Civil Procedure 23(b)(3)

Class certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."   *Hanlon*, 150 F.3d at 1022 (internal quotations omitted).   Rule 23(b)(3) calls for two separate inquiries: (1) do issues of fact or law common to the class "predominate" over issues unique to

13

individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The Advisory Committee added the requirements of predominance and superiority to the qualifications for class certification, "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote … uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee notes).

    1.  <u>Predominance</u>

    A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'"  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citation omitted).  Thus, courts must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis."  7A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1778 (3d ed. 2005).  Under Rule 23(b)(3), "[t]he predominance inquiry focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation."  *Vinole*, 571 F.3d at 944 (internal quotation marks, footnote and citation omitted).  The predominance inquiry under Rule 23(b) is therefore "far more demanding" than the commonality requirement of Rule 23(a)(2), *Amchem*, 521 U.S. at 623-24, as it tests whether the claims advanced by the proposed class can be adjudicated on a class-wide basis.  It does not require exclusively common questions, but merely predominance of common questions.  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013).  Plaintiffs must prove by a preponderance of evidence that common questions predominate over questions affecting only individual members, and that the common questions relate to "a central issue in the plaintiffs' claim."  *Olean*, 31 F.4th at 665.

/ / /

*A.  Elements of a FEHA Claim under § 12940(e)*

The predominance inquiry begins "with the elements of the underlying cause of action." *Olean*, 31 F.4th at 665.  Plaintiffs' claim is based on § 12940(e)(1) & (3), which in pertinent part, prohibit an "employer" from requiring "any medical or psychological examination of an applicant" or making "any inquiry whether an applicant has a mental disability or physical disability or medical condition[,]" (*id.* § 12940(e)(1)), except that an employer may require such examination or inquiry "provided that … [it] is job related and consistent with business necessity and that all entering employees in the same job classification are subject to the same examination or inquiry." *Id.* § 12940(e)(3).[4]

Unlike many of FEHA's other anti-discrimination provisions, no pattern California Civil Jury Instruction (CACI) exists for the present claim.  Thus, Plaintiffs direct the Court to CACI instructions that cover claims arising under other provisions of the FEHA.[5] Plaintiffs also rely on the California Supreme Court's decision in *Raines* and FEHA's text in § 12940(e) to formulate the elements of their claim.  Plaintiffs argue a claim under § 12940(e) includes the following elements: (1) Plaintiffs were job applicants; (2) USHW made one or more medical or psychological inquiries of Plaintiffs; (3) USHW made these inquiries on behalf of Plaintiffs' prospective employers, i.e., that it acted as an "agent" under FEHA; and (4) the inquiries violated the FEHA.

USHW proposes similar elements and points out that under § 12940(e)(3) Plaintiffs must prove that USHW's HHQ is not "job related and consistent with business

---

[4] Plaintiffs' TAC alleges violations of FEHA §12940(d) (prohibiting circulating any publication or making any nonjob-related inquiry of any employee or applicant that discriminates based on, among other things, "mental disability, medical condition[.]")  However, Plaintiff's motion for class certification and supplemental briefing make clear that Plaintiffs now seek relief only under § 12940(e)(1) & (3).
[5] For example, CACI 2500, *et seq.* provide pattern instructions for claims under FEHA § 12940, subds. (a) (disparate treatment), (h) (retaliation), (j) (harassment), (k) (failure to prevent), (l) (failure to accommodate), (m) (failure to provide reasonable accommodation), and (n) (failure to engage in interactive process).

necessity[.]"[6]  Plaintiffs proposed fourth element—"the inquires violated FEHA"—gets to that issue.  A medical or psychological inquiry violates the FEHA if the inquiry is not "tailored to assess the employee's ability to carry out the essential functions of the job or to determine whether the employee poses a danger to the employee or others due to disability[,]" (*Kao v. Univ. of S.F.*, 229 Cal. App. 4th 437, 451 (2014) (citation omitted); Cal. Code Regs. Tit. 2, § 11065(k) (similar)), and is not "consistent with business necessity."  *Kao*, 229 Cal. App. 4th at 452 (stating the "need for the disability inquiry or medical examination [must be] vital to the business.").

At this stage, the Court need not definitively determine the elements of a § 12940(e) claim, particularly since the parties are largely in agreement as to the elements of the claim. For purposes of the present motion, the Court proceeds under the assumption that Plaintiffs must prove USHW's HHQ was neither tailored to the applicant's job-related functions nor consistent with business necessity.  Finally, there is no dispute that Plaintiffs must prove injury, causation, and damages.

### B. Common Questions

In light of the foregoing elements, Plaintiffs contend there are two common questions regarding the FEHA claim that predominate, both of which are susceptible to determination on a class-wide basis and will resolve issues of liability, injury and causation. One, did USHW act as an "agent" of referring employers when administering PPEs; and two, was USHW's use of the HHQ compliant with FEHA's restrictions on medical or psychological inquiries?  (Mot. at 9-10.)  Plaintiffs argue both questions can be answered

---

[6] FEHA § 12940(e)(2) provides that: "[n]otwithstanding paragraph [(e)](1), an employer or employment agency may inquire into the ability of an applicant to perform job-related functions and may respond to an applicant's request for reasonable accommodation."  It is apparent given the briefing and argument on the present motion that Plaintiffs are no longer pursuing a claim under this provision.  Section 12940(e)(3) provides that "[n]otwithstanding paragraph [(e)](1), an employer or employment agency may require a medical or psychological examination or make a medical or psychological inquiry of a job applicant after an employment offer has been made but prior to the commencement of employment duties, provided that the examination or inquiry is job related and consistent with business necessity and that all entering employees in the same job classification are subject to the same examination or inquiry."

on a class-wide basis through evidence that will not vary from class member to class member.  USHW argues these are not common questions applicable to all class members because determining whether USHW acted as an agent for more than 9,000 referring employers necessitates 9,000 individual inquiries.  In addition, USHW argues there may be a job for which the HHQ would be FEHA compliant, thus determining what that job is would require individual inquiries into all the jobs that were conditionally offered to class members.

At this stage, "the court must make a 'rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove' the common question in one stroke." *Olean*, 31 F.4th at 663 (citation omitted).  In making that assessment, "courts may not avoid resolving questions pertinent to class certification merely because they overlap with the merits of the plaintiffs' case." *Lytle v. Nutramax Labs., Inc.*, 99 F.4th 557, 571 (9th Cir. 2024).  This "does not grant [] courts … license to engage in free-ranging merit inquiries at the certification stage.  Rather, such "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (quoting *Amgen*, 568 U.S. at 466).

To answer the first question, Plaintiffs must produce class wide evidence that USHW "acted as an agent" of referring employers when it conducted PPEs on class members.  The parties dispute the standard for determining when a business entity "acts as an agent" under FEHA, and therefore dispute whether common evidence can answer this question.  The Court cannot evaluate the sufficiency of Plaintiffs' evidence without determining the standard for when a business entity acts as an agent under the FEHA.  *See Ellis v. Costco Corp.*, 657 F.3d 970, 981 (stating "a district court must consider the merits if they overlap with the Rule 23(a) requirements.")

USHW points out that the California Supreme Court in *Raines* did not determine that USHW was acting as an agent of referring employers.  To answer that question, USHW argues "common law agency rules govern the agency determination[.]"  (Defendants'

Supplemental Briefing, (Defs.' Supp.), ECF No. 158 at 6.)  Accordingly, the Court must first settle the parties' dispute over whether a business entity can be directly liable under the FEHA even if it is not acting under the "direction and control" of the referring employer—hallmarks of common law agency.  USHW presses for this standard because determining the existence of an agency relationship under common law generally is a fact bound inquiry that would necessitate individual inquiries for "9,000 direct employers, with respect to USHW['s] 245,873 health examinations."  (*Id.* at 10).

In *Raines*, 15 Cal. 5th at 268, the California Supreme Court answered the following certified question from the Ninth Circuit: "Does [the FEHA], which defines 'employer' to include 'any person acting as an agent of employer,' Cal. Gov't Code § 12926(d), permit a business entity acting as an agent of an employer to be held directly liable for employment discrimination?"  *Id.* at 288 (citing *Raines v. U.S. Healthworks Medical Group,* 28 F.4th 968, 969 (9th Cir. 2022)).  Answer:

> We conclude that an employer's business entity agents can be held directly liable under the FEHA for employment discrimination in appropriate circumstances when the business-entity agent has a least five employees and carries out FEHA-regulated activities on behalf of an employer.

15 Cal. 5th at 273.  "Stated another way, a business-entity agent's obligation to comply with FEHA and its consequent liability for FEHA violations results from the entity's *own* engagement in FEHA-regulated activities on the employer's behalf."  *Id.* at 290 (emphasis added).

Based on the holdings in *Raines*, Plaintiffs argue the Court should conclude that a business entity of a referring employer may be directly liable under the FEHA when that entity itself engages in FEHA regulated activity on behalf of the referring employer. USHW argues Plaintiffs' interpretation oversimplifies *Raines* and that liability can only be established after Plaintiffs make a showing that USHW was not only a business-entity, but also acted under the direction and control of the referring employer.  Traditional common law agency principles apply, according to USHW.

/ / /

The problem for USHW is that the California Supreme Court rejected USHW's attempt to import common law agency principles into the FEHA. The Supreme Court held:

> At the outset, it is important to note that defendants' argument relies heavily on the common law of agency. Here, however, we are interpreting the scope of statutory language referencing agent liability, and so the common law of agency is not determinative.

15 Cal. 5th at 289. "Because the issue here is statutory, we need not address the extent to which an agent may be held liable at common law for its misfeasance in performing work done on behalf of its principal." *Id.* at 289, n.11.

In reaching its conclusion that common law agency principles do not apply, the Court in *Raines* considered public policy: "If a business entity contracts with an employer to provide services that will affect that employer's employees, and if, in providing those services, the business-entity agent violates FEHA's antidiscrimination policies, causing injury to the employer's employees, it is consistent with sound public policy to treat the business entity as an employer of the injured employees for purposes of applying the FEHA." *Id.* at 288. The Court also relied on federal case law. "In interpreting California's FEHA, California courts often look for guidance to decisions construing federal antidiscrimination laws, including Title VII of the federal Civil Rights Act of 1964" (*id.* at 281), and analyzed cases from the First, Second, Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits. (internal citations and quotations omitted). These cases further make clear that Plaintiffs' reading of *Raines* is correct.

For example, in *Williams v. City of Montgomery*, 742 F.2d 586, 588 (11th Cir. 1984), the Eleventh Circuit held that an institutional agent of an employer can be held directly liable under Title VII to the same extent as an employer. Defining agency liability under Title VII, the court in *Williams* stated: "Where the employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an 'employer' by virtue of the agency relationship." *Id.* (citations omitted). This kind of statutory agency liability does not require analysis of common law agency because when a third party engages in activity traditionally performed by the

employer, it is an agent by virtue of the relationship. *Id.* Likewise, in *Spirt v. Teacher Ins. & Annuity Ass'n.*, 691 F.2d 1054 (2d Cir. 1982), the Second Circuit imposed direct liability on a third party that "exercised a gatekeeper role that would normally be exercised by the employer and, by serving in that role, violated the plaintiff's rights." *Id.* at 1063. Similarly, the Second Circuit rejected the application of common law agency and held that the "the term 'employer,' as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law.'" *Id.* (citations omitted).

The federal cases referenced in *Raines* all impose direct liability on third parties who themselves engage in activities traditionally performed by the employer. Thus, the Court adopts Plaintiffs' interpretation of *Raines*, which imposes direct liability on a business-entity that itself engages in FEHA regulated activity on behalf of a referring employer.

Applying that standard, the Court now considers whether common questions predominate over individualized questions. The first common question set out by Plaintiffs is: did USHW act as an "agent" of referring employers when administering PPEs on their behalf? Plaintiffs intend to introduce evidence that USHW, an undisputed business entity, "administered the PPEs on behalf of and at the direction of employers," and therefore, USHW was acting as an agent of the employers and is directly liable because USHW itself engaged in FEHA-regulated activity under §12940(e). (Mot. at 10.)

Plaintiffs' evidence is capable of class-wide resolution on that issue. *See Olean*, 31 F.4th at 667 ("a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial.") For starters, it is undisputed that USHW administered the PPEs on behalf of the referring employers, i.e., the employers referred to USHW the task of performing the PPEs on applicants who were conditionally offered jobs. Whether the employers had a right of control over USHW in the administration of the PPEs

is irrelevant to USHW's direct liability if USHW itself was engaged in FEHA-related activities.

Plaintiffs also have evidence that all class members received the same HHQ from USHW regardless of the duties or functions of the job conditionally offered. (Mot. at 11) (citing Deposition of USHW's Vice President and Rule 30(b)(6) witness Minh O. Nguyen, ECF No. 131-2, Exhibit B ("Nguyen Depo.") at 71.) According to Mr. Nguyen, the HHQ was presented to every applicant by USHW reception staff upon checking in for a PPE and was required to be "'completed prior to [the applicant] seeing [a clinician],' prior to the clinician even knowing anything about the applicant's job duties, and regardless of the job in question." (*Id.* at 11-12) (citing Nguyen Depo. at 187)). "Every patient had to fill out one of these Health History forms," Mr. Nguyen testified. "Anybody that came in for a preplacement exam at [USHW] had to fill out [the HHQ]." (Reply at 10) (citing Nguyen Depo. at 71.) Plaintiffs also reference the deposition testimony of a USHW physician's assistant, Susan Radoff, who testified that USHW uses the same HHQ for every examination. (Reply at 7-8) (citing Declaration of Michael Miller, ECF No. 151-2, at ¶¶ 2-4 & Exhibits A, C.) This evidence is capable of determining class wide that USHW acted on behalf of referring employers and engaged in FEHA-related activities by administering a medical questionnaire subject to § 12940(e).

USHW argues that a survey of its clients' (i.e., referring employers) files shows that some files are missing HHQs—some 60 out of 245,873 files. Plaintiffs argue that number is statistically insignificant and may be explained by USHW's own conduct, i.e., that it lost, misplaced, or failed to return the hard copy to the file. USHW is free to present this and other competing evidence at trial but that does not change the result here. All the Court is determining at this stage is whether Plaintiffs' evidence, if credited by the trier of fact, is capable of answering common questions and issues class wide. Here, Plaintiffs have come forward with common evidence that is capable of answering class wide the proposed second and third elements of a § 12940(e)—whether USHW made one or more medical or

psychological inquiries of Plaintiffs, and whether USHW made those inquiries on behalf of Plaintiffs' prospective employers, i.e., that it acted as an "agent" under FEHA.

The second common question is whether USHW's use of the HHQ violated FEHA's restrictions on medical inquires.  This relates to Plaintiffs' fourth proposed element—whether the inquiries violated the FEHA.

When asked whether USHW was required to tailor the questions in the HHQ to the job position, USHW's Rule 30(b)(6) witness Mr. Nguyen answered, "No." (Nguyen Depo. at 181.)  "The conduct of the exam or the actual examination is not tailored[.]"  (*Id.*) USHW "didn't have limitations" and did not see "any boundaries" on the medical questions it asked on behalf of employers.  (*Id.* at 164.)  Mr. Nguyen testified that USHW "need[s] to know everything about [an applicant's] health history[,]" and then they can "determine if it's relevant to their ability to do their job." (*Id.* at 182.)  Without boundaries in place, Plaintiffs point out that USHW's HHQ asked every applicant regardless of job duties a broad array of questions, including among others, whether the applicant "commonly has" or "has ever had": venereal diseases; painful or irregulate menstruation; vaginal discharge; vaginal pain; penile discharge; prostate problems; genital pain; genital masses; the date of the applicant's last menstrual period; HIV; mental illness; disabilities; hemorrhoids; diarrhea; black stool; constipation, and whether the applicant is currently pregnant.  (Mot. at 12-13) (citations omitted).

Plaintiffs' expert, Dr. Timur Durrani, MD, MPH, will "opin[e] that there is *no job* for which *every question* on the HHQ is job-related—i.e., that there is at least one question on the HHQ that is not relevant for any job."  (Mot. at 10) (citing Declaration of Dr. Timmur Durani, ("Durrani Decl."), ECF No. 131-3, at ¶¶ 20-22.)  Plaintiffs contend that, "[r]egardless of the job—whether police officer or priest—common evidence is capable of showing that there is simply no basis to ask an applicant undergoing a PPE to disclose the information requested in all 150 questions—for example, a case of venereal infection or fever resolved 20 years prior." (*Id.*)  Dr. Durrani opines that many of the HHQ's inquiries are not conceivably related to any applicant's ability to perform essential job functions or

to do so safely, including questions about venereal disease, menstruation, vaginal and penile discharge, and others.  (*Id.*) (citing Durrani Decl. ¶ 21.)  As Plaintiffs note, the "HHQ speaks for itself[.]"  (*Id.* at 28.)  Its alleged overbreadth can be determined "on its face."  (*Id.*)

Defendants filed a *Daubert* motion to exclude Dr. Durrani's testimony, which was denied without prejudice—the Court having tentatively found that the testimony satisfies Rule 702 of the Federal Rules of Civil Procedure.  At this stage, the Court accepts the testimony and considers it for purposes of deciding the present motion.  *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (2018) (noting that "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification.")  Because Plaintiffs' evidence is capable of proving that there is not a single job for which the HHQ would be FEHA compliant, USHW's liability can be determined class wide.

USHW disputes that there is not a single job for which its HHQ is FEHA compliant. USHW references a number of expert declarations for the proposition that there are "numerous circumstances and examples of jobs in which the [HHQ] was entirely appropriate."  (Opp'n at 18.)  USHW contends that the evidence "clearly shows there are *some* jobs in which all of the [HHQ] inquiries are appropriate if asked by the employer[,]" and thus the only way to determine what job each person was applying for is to examine each file or ask each applicant or employer individually.  (*Id.* at 18-19) (original emphasis). However, as Plaintiffs point out, USHW did not actually identify a single job for which the HHQ is FEHA compliant.  Further, as discussed, Plaintiffs evidence if credited is capable of answering this question class wide.

Plaintiffs' common evidence also addresses injury and causation class wide. Damages, too, at this stage are satisfactorily addressed.  The alleged injury to class members is caused by their being subjected to overbroad and offensive medical inquiries from a standard HHQ in violation of § 12940(e).  Defendants argue that the Court will need to engage in thousands of individualized inquiries among class members to properly assess damages.  However, as noted, Plaintiffs are pursuing only nominal and punitive damages.

To obtain nominal damages, a plaintiff need not show actual damage. Plaintiff alleges that "the commission of th[e] act alone entitles [the plaintiff] to an award of nominal damages, because such damages are presumed to flow from the wrongful act itself." (Mot. at 29) (citations omitted). The Court agrees. *See* Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages.") While Plaintiffs have not articulated the amount of nominal damages and whether such damages would be assessed per violation or aggregated, those issues can be addressed at a later stage of the proceedings. *See Olean* 31 F.4th at 669 (citing *In re Urethane*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("'The presence of individualized damages issues' does not preclude a court from certifying a class because '[c]lass-wide proof is not required for all issues'")). With respect to punitive damages, the focus is on USHW's conduct class wide. The trier of fact can determine whether USHW acted with malice, oppression, or in reckless disregard of the rights of all class members based on common evidence—giving a standardized HHQ to all applicants regardless of job duty. *See Ellis v. Costco*, 285 F.R.D. 492, 543 (N.D. Cal. 2012) (stating "[b]ecause the purpose of punitive damages is not to compensate the victim, but to punish and deter the *Olean*, 31 F.4th at 663, any claims for such damages hinges, not on facts unique to each Class Member, but on the defendant's conduct toward the class as a whole.") So it is here.

Finally, USHW lists without evidentiary support a number of potential circumstances that it argues could raise individual inquires and predominate over common facts and issues, including whether or not putative class members signed arbitration agreements or collective bargaining agreements; have released claims against their employers through contract or settlement agreement; or whether the employer is a religious association exempt from liability. USHW, however, has provided no evidence that supports any of its listed potential circumstances, let alone an example of an unnamed class member that would be impacted by any of the referenced agreements or that works for an exempt religious association. Given the hypothetical nature of these arguments, the Court declines to consider them on the present record. In addition, to the extent it is determined

at a later time that some class members are employed by an exempt religious association, it appears they can be identified from Defendants' database and culled out.  Further, with regard to USHW's argument that arbitration and collective bargaining agreements may impact class members' claims against their employers and "agents" of those employers, there are two problems.  First, Plaintiffs are not pursuing claims against their employers in this action, so any agreement between those class members and their employers would not be relevant to this litigation.  Second, USHW's agency argument is premised on common law agency, which also is irrelevant to this litigation.  Because Plaintiffs pursue direct liability against USHW for its FEHA-related activity, any arbitration or collective bargaining agreement between class members and their employers likely are irrelevant to the class claims here.

  2. Superiority of Class Action

   In assessing superiority, courts assess the following:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)(A-D)).

   The Court finds this matter to be most suitable for adjudication as a class action. The Class consists of several hundred thousand individuals alleging a single claim under the FEHA as a result of USHW's use of an identical HHQ on all class members regardless of the job for which they applied.  As discussed, Plaintiffs seek only nominal and punitive damages and have significantly pared down the scope of their claims, thereby avoiding the need for individual class member inquiries.  Considering the cost of pursuing a lawsuit on an individual versus class wide basis, class members would likely have minimal interest in pursuing individual, separate actions and are better served through representative litigation

lead by competent class counsel.  Evaluating USHW's conduct in one trial is also efficient and superior to conducting a large number of individual trials repetitively addressing the same conduct and issues.  Thus, in the interests of judicial efficiency and economy, the Court certifies this class.

## IV. CONCLUSION AND ORDER

For these reasons, Plaintiffs' motion for class certification is **GRANTED** in part and **DENIED** in part.  Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court certifies a class consisting of every applicant for a paid position who underwent a post-offer, pre-placement examination and was subjected to USHW's health history questionnaire at a USHW facility in California between October 23, 2017, and December 31, 2018.  Within 30 days from the filing of this Order, the parties shall meet and confer on the form of class notice to be provided for this Court's approval and contact the magistrate judge to schedule a further case management conference, at which time all dates will be set, including a trial date.

**IT IS SO ORDERED**.

Dated:  August 16, 2024

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court